**Dale RUCKER, Plaintiff and Appellant,**

v.

**Arlin DALTON, Defendant and Respondent.**

**No. 16082.**

Supreme Court of Utah.

July 26, 1979.

---

1.  *Gassman  v.  Dorius*,  Utah,  543  P.2d  197  (1975).

Dale Rucker, pro se.

Ronald R. Stanger, Provo, for defendant and respondent.

STEWART, Justice:

This appeal is from a judgment of the district court awarding to plaintiff damages in the amount of $2,000 plus court costs for deficiencies in the plumbing work done as part of the construction of an addition to a residence owned by plaintiff. The case was tried to the court without a jury. Plaintiff seeks reversal of the court's judgment and an increase in the amount of the judgment by an additional $9,490.

In the summer of 1976 plaintiff solicited a bid from defendant, a nonlicensed building contractor, for the construction of an addition to his home. Plaintiff provided floor plans, and from them defendant prepared and submitted to plaintiff a one-page quotation dated July 19, 1976, which was the basis of the agreement between the parties. The bid, designated Exhibit "1", set forth the following items:

Addition size: 16′ x 37′ on east side of old home.

| | |
|---|---:|
| Basement, concrete, digging | $ 1,300.00 |
| Upstairs (main floor) all materials for framing up to square, roof included and labor | 7,700.00 |
| Plumbing and all fixtures complete | 890.00 |
| Metal windows in basement, with metal frames | $ 237.50 |
| Metal windows on main floors— 30–30 & 2–30–40 | 180.00 |
| A difference in price, if any, on wood windows | |
| Marble crete on outside of new addition | 940.00 |
| Electrical work not included | |
| | $11,247.50 |

The parties orally agreed that the defendant would not do the heating work.

Plaintiff applied for and received a building permit in his name. No contractor was named on the application form, and the parties dispute whether plaintiff believed defendant to be a licensed contractor. Defendant's work on the addition was done between August and December of 1976. Defendant hired and paid several employees for work on various aspects of the job. Plaintiff was frequently present during construction, and his son did some of the work. Plaintiff made periodic payments to defendant totaling $11,050. The balance of the agreed-upon price has not been paid.

On the basis of the record it appears (although we do not so hold) that much of the work was done in an unworkmanlike manner. In June 1977 the chief building official for the City of Provo sent a letter to both plaintiff and defendant setting out a number of plumbing code violations and structural deficiencies. The letter stated that corrections needed to be made by properly qualified and licensed contractors. A licensed building contractor testified that to remedy the deficiencies to meet building code requirements would cost an estimated $9,490, excluding plumbing repairs. There was also testimony that the cost of remedying the deficiencies in the plumbing work was $2,000.

Plaintiff brought suit for damages in the amount of $20,000, plus attorney's fees and costs. Defendant counterclaimed for $500, the balance of the price due under the contract, and costs. The trial court awarded $2,000 damages to plaintiff based on deficiencies in the plumbing work only. With

regard to the other aspects of the work, the trial court found in its findings of fact that "the plaintiff failed in its burden of proof to establish that the defendant agreed to carry [them] out in a workmanlike proper manner . . . ."

The trial court's findings of fact, in pertinent part, read as follows:

1. That the plaintiff and the defendant arrived at an agreement dated the 19th day of July, 1976 whereby the defendant agreed to do certain construction work for the plaintiff for the sum of $11,247.50.

2. That the plaintiff paid to the defendant the sum of $11,050.00 for the construction work.

3. That at the time of said agreement and during the time the work was performed, the defendant was not a licensed contractor in the State of Utah.

4. That the plaintiff did not control on a day to day basis the plumbing aspect cf the agreement dated the 19th day of July, 1976. That the defendant failed to carry out said plumbing work in a proper and workmanlike manner and a reasonable cost for the repair of the same is $2,000.00

5. That the plaintiff failed in its burden of proof to establish that the defendant agreed to carry out in a workmanlike proper manner the balance of the terms of the agreement of the 19th day of July, 1976.

The trial court also filed a memorandum opinion stating that, except as to plumbing, it was "impossible to determine from the record who was responsible for what. The plaintiff therefore fails in his burden except as regards to plumbing. *Exhibit 1 indicates, among other things, that defendant was responsible for the plumbing.*" [Emphasis added.]

Plaintiff contends on this appeal that the agreement between him and the defendant established defendant as an independent contractor as to all items in the bid. The written bid submitted by defendant does at least suggest as much. On the other hand, there is evidence that plaintiff controlled, at least to some extent, the activities of defendant. This control tends to support an employer-employee relationship. If the defects in construction were done by an employee with the acquiescence of the employer, the employer would be liable for deficiencies.

The trial court found defendant to be an independent contractor only for purposes of the plumbing aspect of the agreement, see Finding No. 4. There is no finding of fact as to why the trial court found defendant to be an independent contractor as to one out of eight items on the bid, which apparently was the basis of the contract, and not the other seven items. Indeed the trial court's memorandum decision indicates that it held defendant responsible for plumbing because it was listed on Exhibit "1". But so were five other items. If mere listing on Exhibit "1" were sufficient to establish liability, we fail to understand how the trial court distinguished between plumbing and the other items.

■ Although this apparent inconsistency might be explainable, there is no basis for this Court to resolve that inconsistency from the findings of fact and conclusions of law without making our own findings. However, it is not the function of an appellate court to make findings of fact because it does not have the advantage of seeing and hearing the witnesses testify. *Mendelson v. Roland*, 66 Utah 487, 243 P. 798 (1926).

■ The importance of complete, accurate and consistent findings of fact in a case tried by a judge is essential to the resolution of dispute under the proper rule of law. To that end the findings should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached. *Woods Construction Co. v. Pool Construction Co.*, 314 F.2d 405 (10 Cir. 1963); *Salisbury v. Hanover*

*Insurance Co.*, Wyo., 443 P.2d 135 (1968). The rule as stated in *Prows v. Hawley*, 72 Utah 444, 271 P. 31, 33 (1928) is:

> that until the court has found on all the material issues raised by the pleadings, the findings are insufficient to support a judgment; and that findings should be sufficiently distinct and certain as not to require an investigation or review to determine what issues are decided.

Unless findings of fact meet such standards, application of the proper rule of law is difficult, if not impossible, and the reviewing function of this Court is seriously undermined. The controlling issue in this case appears to be who was responsible for the manner in which the work was done. The findings do not determine that issue as to the nonplumbing aspects of the job and are seemingly inconsistent on their face.

The judgment of the trial court is vacated, and the case remanded for additional findings of fact in accordance with the evidence.

CROCKETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.