**STATE of Utah, Plaintiff and Appellee,**

v.

**Robert P. HAGEN, Defendant and Appellant.**

**No. 900095–CA.**

Court of Appeals of Utah.

Nov. 23, 1990.

---

Harry H. Souvall (argued), McRae & De-Land, Vernal, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., David B. Thompson (argued), Asst. Atty. Gen., Governmental Affairs, Salt Lake City, for plaintiff and appellee.

## MEMORANDUM DECISION

Before GARFF, JACKSON and ORME, JJ., sitting in Vernal, Utah[1].

ORME, Judge:

Defendant appeals his conviction on the narrow ground that the crime for which he was convicted, selling marijuana, was committed at Myton, Utah, a location within the territorial confines of the Uintah and Ouray Indian Reservation, and that the state failed to establish the court's jurisdiction over him when it failed to prove he is not an Indian when confronted with his claim that he is. *See, e.g., State v. St. Francis*, 151 Vt. 384, 563 A.2d 249, 251 (1989) ("If defendants are 'Indians' and the crimes were committed within 'Indian country,' then Vermont has no jurisdiction over defendants."); *People v. Luna*, 683 P.2d 362, 365 (Colo.Ct.App.1984) (state lacks jurisdiction to prosecute Indian defendants for alleged sale and distribution of controlled substances in "Indian country").

The state concedes on appeal that the trial court erred in requiring *defendant* to prove, by clear and convincing evidence,

---

1. Oral argument in this case was heard in Vernal, Utah. This court has frequently sat in locations other than the court's facility in Salt Lake City, as permitted by Utah Code Ann. § 78–2a–5 (1987). To date, panels of the court have heard argument in both Vernal and Richfield on two separate occasions, as well as in Logan, Brigham City, Cedar City, St. George, Fillmore, and Manti. The cases heard "on circuit" typically arose in the general area, and often one or both attorneys reside in the area. Clients who might otherwise have to pay for an attorney's time in traveling to Salt Lake City can be spared that expense. Parties who might not be able to come to Salt Lake to hear their cases argued can often do so in their own or a nearby community. School classes have occasionally attended our proceedings. Local sheriffs and court personnel have invariably been cooperative and, with the exception of an occasional glitch with unfamiliar recording equipment and one instance of a motel operator mistaking us for dog-show judges, our sessions outside Salt Lake have come off without incident.

The court remains firm in its commitment to hold sessions throughout the state, as local caseloads warrant and our own calendaring demands permit.

that he is in fact an Indian. The state properly concedes that the prosecution was required to prove jurisdiction, i.e., that defendant was not an Indian, albeit only by a preponderance of evidence. *See, e.g., State v. Sorenson,* 758 P.2d 466, 469–70 (Utah Ct.App.1988).

The state advances two arguments against reversal notwithstanding these concessions. First, it suggests that the precise question of whether Myton is really within the confines of the reservation is presently before the Utah Supreme Court in the case of *State v. Perank,* No. 860196, and that we should defer our consideration of this case until the decision in that case is issued. Second, it argues that we should remand, either to let the trial court reassess the evidence before it with the matters of burden of proof and evidentiary standard correctly in mind or, preferably, to give the state the chance to put on additional jurisdictional evidence since its failure to put on sufficient evidence resulted from an honest mistake on its part, shared by the trial court, concerning who had the burden of proof on defendant's claimed Indian status.

■ Both arguments may be summarily dealt with. The federal courts, construing federal statutes, federal regulations, and federal Indian policy, have determined that Myton is within the confines of the reservation. *See Ute Indian Tribe v. State of Utah,* 773 F.2d 1087 (10th Cir.1985) (en banc), *cert. denied,* 479 U.S. 994, 107 S.Ct. 596, 93 L.Ed.2d 596 (1986). *See also Ute Indian Tribe v. State of Utah,* 521 F.Supp. 1072, 1188 (D.Utah 1981) (map appended to court's opinion depicts Myton as being well within both present and historical boundaries of Uintah and Ouray Reservation).

The Tenth Circuit's decision does not appear to hold open any role for the state courts in refining its holding in *Ute Indian Tribe.* While we have not been acquainted with the precise arguments advanced by the state in *Perank,* we are hard-pressed to see how, given the Supremacy Clause and the doctrine of collateral estoppel, our state courts could reach a contrary decision that would have any practical effect. Seeing no possibility of an effective decision in *Perank* contrary to the result in *Ute Indian Tribe,* we see no reason to await the *Perank* decision, especially since defendant is presently incarcerated.

■ Nor would remand be appropriate. The only testimony concerning whether defendant is an Indian is that which was offered by defendant himself. Defendant testified that he has lived on Indian reservations all his life, that he has attended reservation schools and been treated at reservation hospitals, that he is a member of the Little Shell Tribe of Chippewa Indians, that he had received proceeds from a judgment entered in favor of various bands of the Chippewas pursuant to a distribution made by the Bureau of Indian Affairs, and that his ancestry is 5/16ths Indian. Cross-examination established that defendant was not a Ute, that he was not actually "enrolled" in any tribe, and that his father was not an Indian. Under the applicable test,[2] there is simply no way this evidence could be "weighed" by the trial court to come to the conclusion that the state had met its burden of proving jurisdiction by proving that defendant is not an Indian. Indeed, even if the court chose to discredit defendant's testimony completely, the result would be that there is no evidence in the record at all concerning defendant's

---

2. "Two elements must be satisfied before it can be found that [a defendant] is an Indian under federal law. Initially, it must appear that he has a significant percentage of Indian blood. Secondly, the [defendant] must be recognized as an Indian either by the federal government or by some tribe or society of Indians." *Goforth v. State,* 644 P.2d 114, 116 (Okla.Crim.1982). Five-sixteenths Indian blood clearly qualifies as a "significant percentage," the historical debate treated in the cases focusing on whether *two*-sixteenths is enough. *See, e.g., Sully v. United States,* 195 F. 113 (8th Cir.1912) (one-eighth Indian blood is sufficient); *Vialpando v. State,* 640 P.2d 77, 80 (Wyo.1982) (one-eighth Indian blood not sufficient). The "recognition" requirement is more fluid. *See, e.g., St. Cloud v. United States,* 702 F.Supp. 1456, 1461 (D.S.D. 1988) (factors to consider include government provision of "assistance reserved only to Indians," receiving "benefits of tribal affiliation," living on a reservation). Formal enrollment in a federally recognized tribe is not required. *Id.*

Indian or non-Indian status. The state simply could not meet its burden in the absence of any evidence establishing jurisdiction.

Nor is the state entitled to a second chance to put on evidence addressed to the jurisdictional issue. When reversal results from the failure of the state to prove jurisdiction, further trial proceedings are not in order. On the contrary, the conviction is reversed and the defendant is ordered discharged. *See, e.g., Sorenson,* 758 P.2d at 470. We have not been shown that any exception exists where the failure of proof stems from a good-faith mistake on the part of the prosecution.[3]

Defendant's conviction is reversed and he is ordered discharged.

GARFF and JACKSON, JJ., concur.

---

3. We assume the vast majority of instances where the prosecution fails to meet its burden to prove jurisdiction results from some honest mistake on its part concerning its burden and how to meet it.