2000 UT App 311

**STATE of Utah, Plaintiff and Appellee,**

v.

**Pearl TOPANOTES, Defendant and Appellant.**

No. 990708–CA.

Court of Appeals of Utah.

Nov. 9, 2000.

Rehearing Denied Dec. 15, 2000.

Linda M. Jones and Ralph Dellapiana, Salt Lake City, for Appellant.

Jan Graham and Marian Decker, Salt Lake City, for Appellee.

Before Judges GREENWOOD, JACKSON, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Defendant Pearl Topanotes appeals from her conviction for possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1999). We reverse and remand.

## BACKGROUND

¶ 2 On October 7, 1998 three Salt Lake City police officers detained defendant on a public street and requested her identification. The officers retained defendant's identification, outside her presence, for approximately five minutes to check for outstanding warrants. The warrant check revealed at least one outstanding warrant,[1] so the officers arrested defendant. The officers then searched defendant and found heroin. Defendant was ultimately charged with possession of a controlled substance.

¶ 3 Defendant moved to suppress the admission of the heroin. The trial court denied the motion, and defendant entered a conditional guilty plea to one count of unlawful possession of a controlled substance; however, she conditioned her plea on the right to

appeal from the trial court's denial of her motion.

## ISSUE AND STANDARD OF REVIEW

¶ 4 Defendant argues that the trial court erred in denying her motion because the police officers conducted a level-two stop without the requisite articulable suspicion. "[T]he determination of whether an encounter with law enforcement officers constitutes a seizure under the Fourth Amendment ... is a legal conclusion that we review for correctness." *Salt Lake City v. Ray*, 2000 UT App 55, ¶ 8, 998 P.2d 274.

## ANALYSIS

¶ 5 Three levels of constitutionally permissible encounters between police officers and citizens exist:

(1) an officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will; (2) an officer may seize a person if the officer has an "articulable suspicion" that the person has committed or is about to commit a crime; however, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop;" (3) an officer may arrest a suspect if the officer has probable cause to believe an offense has been committed or is being committed.

*Id.* (quoting *State v. Deitman*, 739 P.2d 616, 617–18 (Utah 1987)) (per curiam) (alteration in original) (citation omitted).

¶ 6 We addressed a similar situation in *Ray*.[2] In that case, two police officers approached the defendant as she stood on a walkway near a convenience store. *See id.* at ¶ 4. The officers asked for and then retained the defendant's identification to check for outstanding warrants, a process which took about five minutes. *See id.* Before finally determining the defendant's warrant status, one of the officers asked to search her bags. *See id.* The defendant consented to the search, and the officer found drug paraphernalia. *See id.* at ¶ 6. The officers then ar-

---

1. The nature and amount of the outstanding warrant(s) was not disclosed in the record.

2. The Utah Court of Appeals decided *Ray* on March 2, 2000, about eight months after the trial court decided this matter.

rested her and charged her with possessing drug paraphernalia. *See id.* at ¶¶ 6–7.

¶ 7 The defendant moved to suppress the admission of the drug paraphernalia. *See id.* at ¶ 7. Following a hearing on the motion, the trial court determined that the encounter did not violate the defendant's Fourth Amendment rights and denied the motion. *See id.* On appeal, we reversed the trial court, explaining that "[g]iven the totality of the circumstances, it is clear that a reasonable person in [defendant's] position would not feel free to just walk away, *thereby abandoning her identification .*" *See id.* at ¶ 13 (emphasis added).

 ¶ 8 In the present matter, after examining the "totality of the circumstances" surrounding the encounter between the officers and defendant, we believe that "a reasonable person in [defendant's] position would not feel free to just walk away, thereby abandoning her identification." *Id.* Accordingly, we conclude that the detention was a level two detention made without articulable suspicion in violation of defendant's Fourth Amendment rights.[3]

¶ 9 We must next address whether the evidence resulting from the violation can be admitted at defendant's trial. Thus, we examine " 'whether ... the evidence has been come at by exploitation of [the] illegality or by means sufficiently distinguishable to be purged of the primary taint.' " *State v. Northrup,* 756 P.2d 1288, 1294 (Utah Ct.App. 1988) (quoting *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). Furthermore, we must "determine whether the [search of Topanotes] fall[s] within the recognized limited exceptions to the Fourth Amendment warrant requirement." *State v. Genovesi,* 909 P.2d 916, 919 (Utah Ct.App.1995).

¶ 10 The State argues that the officer's discovery of defendant's outstanding warrants supports the application of the inevitable discovery exception to this case. Inev-

itable discovery is a valid exception to the exclusionary rule, *see State v. Northrup,* 756 P.2d 1288, 1293 (Utah Ct.App.1988), and "[t]he appropriate standard governing the inevitable discovery exception is whether 'the prosecution can establish by a preponderance of the evidence that the information ultimately would have been discovered by lawful means.' " *State v. James,* 2000 UT 80, ¶ 16, 405 Utah Adv. Rep. 31 (quoting *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). More precisely, the State " 'must show that the evidence 'would' have been discovered, not simply that it "could" or "might" have been discovered.' " *M.V. v. State,* 1999 UT App 104, ¶ 12, 977 P.2d 494 (quoting *Genovesi,* 909 P.2d at 923 n. 8) (alterations in original).

¶ 11 Because the trial court ruled that the initial detention was legal, the issue of inevitable discovery was not addressed below. "This court has consistently recognized that [issues of search and seizure] are highly fact sensitive," *State v. Lovegren,* 798 P.2d 767, 770 (Utah Ct.App.1990), and "[i]t is not the function of an appellate court to make findings of fact because it does not have the advantage of seeing or hearing the witnesses testify." *Rucker v. Dalton,* 598 P.2d 1336, 1338 (Utah 1979). Moreover, "complete, accurate[,] and consistent findings of fact ... [are] essential to the resolution of dispute under the proper rule of law." *Id.*

¶ 12 Therefore, we remand for a factual determination on whether the heroin would have been inevitably discovered and for such proceedings as may be appropriate.

¶ 13 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and NORMAN H. JACKSON, Associate Presiding Judge.

---

3. The State concedes, on appeal, in light of *Ray,* that by failing to immediately return defendant's identification card, the encounter escalated to a level-two detention. The State also concedes that the police officers had no "articulable suspicion" that defendant had "committed or was about to commit a crime," and therefore the detention was a seizure in violation of the Fourth Amendment.