2001 UT App 346

STATE of Utah, Plaintiff and Appellee,

v.

Eric Jarvis WARREN, Defendant and Appellant.

No. 20000495–CA.

Court of Appeals of Utah.

Nov. 16, 2001.

Catherine E. Lilly, Otis Sterling, III, and Heather Johnson, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Marian Decker, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before JACKSON, Associate P.J., and ORME and THORNE, Jr., JJ.

## OPINION

ORME, Judge:

¶ 1 Appellant Eric Jarvis Warren seeks to overturn his conviction for possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1999). Specifically, he contends the trial court erred in denying his motion to suppress evidence he alleges was seized in violation of his Fourth Amendment rights. Warren argues that the evidence obtained from the police officer's search should have been suppressed because, *inter alia*, he was illegally frisked. The State counters with, among other things, the claim that the evidence would inevitably have been discovered. We reverse.

## BACKGROUND

¶ 2 "Because a determination of the reasonableness of . . . police conduct is highly factual in nature, we review the facts in detail." *State v. Trujillo*, 739 P.2d 85, 86 (Utah Ct.App.1987). On November 28, 1999, at approximately 4:45 a.m., Officer Nathan Swensen observed a grey Cadillac pulled over to the side of the road near the intersection of 200 South and 200 East streets in downtown Salt Lake City. Occupying the driver's seat of that vehicle was appellant

Warren, a thirty-eight year old African-American male. Officer Swensen also observed another unidentified individual leaning into the front passenger's side door of Warren's car.

¶ 3 Officer Swensen observed this activity for less than a minute, did not hear any of the conversation that took place, could not tell what the two people were doing, and did not recognize the vehicle or individuals from prior encounters. Nonetheless, Officer Swensen assumed that Warren and the unidentified individual were engaged in a transaction involving either drugs or prostitution. Officer Swensen testified that he based his suspicion on the fact that it was early in the morning and there were no open businesses or residences in the vicinity. Despite his suspicions, Officer Swensen did not then approach Warren's vehicle or the unidentified man, who departed on foot.

¶ 4 Officer Swensen then observed Warren pull away from the curb and make a left turn onto 200 South, followed by a lane change, without signaling. Officer Swensen pulled Warren over after observing the traffic violation. He requested Warren's driver's license and vehicle registration. Warren readily provided the requested materials. Officer Swensen noticed that the license had expired in 1995. Warren explained that he had a current license, but that it had been stolen.

¶ 5 Officer Swensen then set about to ascertain why Warren was out at that time of night and what he had been doing with the unidentified man. He asked questions regarding who the unidentified man was, what they were doing, and whether Warren had dropped the man off or just met him. Warren responded by telling Officer Swensen that his mother and the man's mother were acquaintances and that he dropped the man off after they had been together at someone's house. Warren also indicated that he had been looking for packing boxes for his sister, who was moving. Officer Swensen's questioning lasted approximately two minutes. Officer Swensen conceded at the suppression hearing that these questions were unrelated to and unnecessary for the proper effectuation of the traffic stop.

¶ 6 Officer Swensen returned to his patrol car, checked Warren's license, and learned that it was otherwise current but had been suspended for failure to pay reinstatement fees. Officer Swensen then decided to impound Warren's car. He asked Warren to get out of the car to sign citations for failure to signal and for driving without a valid license. Officer Swensen testified he did not intend to arrest Warren and only had him exit the vehicle to inform him about the impound and to sign the citations.

¶ 7 When Warren was out of the car, Officer Swensen frisked him. He did not believe that Warren was armed or dangerous, but frisked him as a matter of routine.[1] A white plastic "twist," later identified as cocaine, fell from Warren's waist during the frisk, whereupon Warren was arrested. An inventory search of Warren's car uncovered a knife concealed under the armrest, and a more in-depth search of Warren's person, incident to arrest, led to the discovery of more cocaine and a glass pipe.

¶ 8 Warren moved to suppress the cocaine and pipe as evidence, claiming (1) that the scope of the detention and questioning went beyond the purpose of the traffic stop and (2) that the frisk was not justified by a reasonable suspicion that he was armed. The trial court denied the motion, concluding that the questioning was reasonable given the officer's personal observations and resulting suspicion. The court also ruled that the frisk was justified by the officer's legitimate concern for his safety.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 The issues presented in this appeal are whether the trial court, in denying appellant's motion to suppress, correctly determined that (1) Officer Swensen properly extended the scope of the traffic stop beyond its original purpose and (2) the officer's search of Warren did not violate the Fourth Amendment.

■ ¶ 10 "The factual findings underlying a trial court's decision to grant or deny a motion to suppress evidence are reviewed under the deferential clearly-erroneous standard, and the legal conclusions are reviewed for correctness, with a measure of discretion given to the trial judge's application of the legal standard to the facts." *State v. Moreno*, 910 P.2d 1245, 1247 (Utah Ct.App.), *cert. denied*, 916 P.2d 909 (Utah 1996).

¶ 11 The State argues that even if the actions of Officer Swensen violated Warren's Fourth Amendment rights, the case should be remanded to the trial court to determine if the evidence acquired from the investigation should nonetheless be admitted because it would inevitably have been discovered.

## I. LEGALITY OF FRISK

¶ 12 Warren argues that the evidence obtained from his person was inadmissible at trial because he was frisked absent any reasonable suspicion that he was armed. He points out that at the suppression hearing Officer Swensen testified he did not believe Warren to be armed at the time he decided to frisk him. The State insists that Officer Swensen's search of Warren was objectively reasonable under the Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "[g]iven the circumstances of the traffic stop, including the deserted downtown area at an unusually early hour, defendant's lie about the validity of his license, and recognition that traffic stops are inherently dangerous."[2]

■ ¶ 13 The State's argument reflects a fundamental misunderstanding of the *Terry*

---

1. In fact, when asked, the officer testified that his reasons for the frisk were "[j]ust from training, and for my safety, and everybody that was there, their safety. Whenever I pull somebody out of a car, I perform a Terry frisk just to see if there's weapons. Also because of the fact that with there being drug activity and prostitution and so on, people that are involved in that usually carry weapons. So with that in mind, also for the fact that I always do that, perform that Terry frisk when I pull somebody out of a car, that's why I did it."

2. Apparently recognizing the lack of any articulable facts that would reasonably lead to an inference that Warren and his acquaintance were engaged in a drug or prostitution transaction, the State on appeal does not seriously press this angle as a basis for suspecting Warren was armed.

holding, which is not nearly as open-ended as the State seems to suggest.

In *Terry,* the Supreme Court established a narrowly drawn exception to the Fourth Amendment requirement that police obtain a warrant for all searches. Where a police officer validly stops an individual for investigatory or other purposes *and reasonably believes that the individual may be armed and dangerous,* the officer may conduct a "frisk" or "pat-down" search of the individual to discover weapons that might be used against him.

*State v. Carter,* 707 P.2d 656, 659 (Utah 1985) (emphasis added).

■ ¶ 14 Although "[i]t is not essential that an officer actually have been in fear" to perform a *Terry* frisk, the State must present articulable facts that would reasonably lead an objective officer to conclude that the suspect may be armed. *Id.* "A mere unparticularized suspicion or hunch is not sufficient." *Id.*

■ ¶ 15 Two basic scenarios may warrant a *Terry* frisk. In the first, facts and circumstances unique to the particular suspect and/or factual context may give rise to a reasonable suspicion the suspect may be armed, such as a suspect with a bulge in his clothing that appears to be a weapon or a suspect who is hesitant in denying that he is armed and aggressively approaches the officer immediately upon being stopped. *See State v. Rochell,* 850 P.2d 480, 483 (Utah Ct.App.1993); Wayne R. LaFave, 4 *Search and Seizure,* § 9.5(a), at 252, 257 (3rd ed.1996). In the second scenario, it is not so much the peculiarities of the suspect and circumstances as it is the inherent nature of the crime being investigated that leads to the

reasonable suspicion that the suspect may be armed. The leading treatise on Fourth Amendment jurisprudence explains that while it may be reasonable for an officer to frisk a suspect who has been stopped based upon a suspicion that he is engaging in criminal activity for which an offender would likely be armed, it does not follow that officers are free to frisk any individual suspected of any crime.[3] *See* Wayne R. LaFave, 4 *Search and Seizure,* § 9.5(a), at 254–59 (3rd ed.1996). Crimes that, by their nature, suggest the presence of weapons include: "robbery, burglary, rape, assault with weapons, homicide, and dealing in large quantities of narcotics." *Id.* at 255–56 (footnotes omitted). "But for other types of crimes, such as trafficking in small quantities of narcotics, possession of marijuana, illegal possession of liquor, prostitution, bookmaking, shoplifting, underage drinking, driving under the influence and lesser traffic offenses, minor assault without weapons, or vagrancy," there must be particular facts which lead the officer to believe that a suspect is armed. *Id.* at 256–57 (footnotes omitted).

■ ¶ 16 Beyond his supposition that Warren and his unidentified companion were engaging in a transaction for either prostitution or drugs, Officer Swensen did not provide the trial court with any facts that justified a *Terry* frisk. The fact that Officer Swensen candidly admitted at the suppression hearing that he did not believe Warren was armed at the time he decided to frisk him clearly takes Officer Swensen's actions outside of *Terry's* limited justification for warrantless searches. Nor do the facts urged by the State on appeal to rationalize the frisk furnish the required foundation.[4] We therefore conclude

---

**3.** This court has expressed an unwillingness to characterize a frisk as justified where the possibility of a crime being committed is speculative at best and the officer's suspicions do "not generally implicate an inherently dangerous situation or specifically indicate that the suspect [is] armed." *State v. White,* 856 P.2d 656, 663–66 (Utah Ct.App.1993) (holding that "unfounded allegations of attenuated domestic violence" and suspicion of cocaine use did not justify an immediate frisk). Only where there is a reasonable suspicion of criminal activity and the nature of the crime suggests an increased likelihood that the suspect is armed can a frisk be justified. *See id.; State v. Carter,* 707 P.2d 656, 660 (Utah

1985) (authorizing the frisk of a burglary suspect who matched a police radio description because an officer could reasonably conclude that a burglary suspect might be carrying dangerous tools or weapons); *State v. Dorsey,* 731 P.2d 1085, 1092 (Utah 1986) (Zimmerman, J., concurring) (explaining that *Terry* frisk of suspect reasonably believed to be involved in moving large quantities of illegal drugs over long distances was justified).

**4.** *See* ¶ 12, *supra.* As noted, "lesser traffic offenses" are not suggestive of weapons. Wayne R. LaFave, 4 *Search and Seizure,* § 9.5(a), at 256 (3rd ed.1996). Nor is the lateness of the hour.

that the search violated Warren's Fourth Amendment rights, and the evidence obtained thereby should have been suppressed.[5]

## II.  INEVITABLE DISCOVERY

¶ 17 The State argues that even if the search was unlawful, this case should be remanded to the trial court to determine if the seizure of cocaine and paraphernalia from Warren's person was nonetheless justified under the "inevitable discovery" exception to the exclusionary rule. "Inevitable discovery is a valid exception to the exclusionary rule[.]" *State v. Topanotes,* 2000 UT App 311,¶ 10, 14 P.3d 695. However, under the inevitable discovery doctrine, the State has the burden to " 'establish by a preponderance of the evidence that the information ultimately would have been discovered by lawful means.' " *Id.* (quoting *State v. James,* 2000 UT 80,¶ 16, 13 P.3d 576).

¶ 18 In making its argument, the State correctly points out that the trial court did not make findings of fact addressing this issue.  The State argues the trial court should have the opportunity to do so now. However, in so arguing the State fails to recognize that this lack of findings relevant to inevitable discovery was not due to some lapse or oversight by the trial court, or even to a mistake of law.  Rather, the State failed to timely advance the theory or present evidence to support it.

¶ 19 Although the State bore the burden of proving that the evidence would inevitably have been discovered by lawful means, not one word about inevitable discovery was mentioned during the suppression hearing itself.  No evidence in contemplation of that theory was introduced by the State, nor was it mentioned in the brief oral argument that concluded the hearing.  Rather, the idea surfaced for the first time only in subsequent briefing and a later round of oral arguments when it was raised, with apologies for its untimeliness, by a different prosecutor than

the one who handled the actual suppression hearing.

¶ 20 Moreover, there is absolutely no evidence in the record that would sustain findings in support of a determination that discovery of the drugs and paraphernalia on Warren's person would have been inevitable, along the lines theorized by the State on appeal, even had he not been frisked.  Although the arresting officer did testify that he impounded Warren's car, there was no testimony that, following such impoundment, an inventory search of the vehicle would have been made.  No testimony established the procedure, scope, and criteria of such a search, in accordance with preestablished departmental guidelines, so that the legality of such a search could be gauged.  *See generally State v. Shamblin,* 763 P.2d 425, 426–27 (Utah Ct.App.1988).  The record contains no evidence showing that such a search would have uncovered the knife, much less that such discovery would have prompted further immediate contact with Warren.  There was no testimony that the officers would have been able to quickly locate Warren after discovering the weapon, or that he still would have had narcotics and paraphernalia on his person at the time of any such later encounter.

¶ 21 Because no evidence in the record would support findings establishing inevitable discovery, remand would be a meaningless gesture that should be avoided in the interest of judicial economy.  In *State v. Hagen,* 802 P.2d 745 (Utah Ct.App.1990), *rev'd on other grounds,* 858 P.2d 925 (Utah 1992), *aff'd,* 510 U.S. 399, 114 S.Ct. 958, 127 L.Ed.2d 252 (1994), we explained that a remand is not appropriate where "there is simply no way [the] evidence [can] be 'weighed' by the trial court to come to the conclusion that the state [has] met its burden." *Id.* at 747.  As in *Hagen,* there is no way in this case that the trial court, lacking any relevant evidence, could properly determine that the

---

*See id.* at 260.  Similarly, lying about the status of one's driver's license does not suggest the presence of weapons.

**5.**  Having concluded that the evidence obtained should have been suppressed due to the unlawful

frisk, we need not address whether Officer Swensen also violated Warren's rights by impermissibly extending his questioning beyond the scope of the traffic stop.

police would have inevitably discovered the cocaine and pipe. *See id.*

## CONCLUSION

¶ 22 Because when Officer Swensen frisked Warren he did not believe, and had no basis on which to reasonably conclude, that Warren might be armed, the frisk was unlawful. The evidence procured as a result of that frisk must be suppressed. Further, because the State failed to meet its burden to establish the discovery of the evidence was inevitable, that theory has long since been foreclosed. Remand for consideration of that theory's applicability at this late date cannot be justified in the complete absence of any evidence addressing inevitable discovery. Accordingly, we reverse and remand for a new trial or such other proceedings as may now be appropriate.

¶ 23 I CONCUR: NORMAN H. JACKSON, Associate Presiding Judge.

THORNE, Jr., Judge (concurring in part, dissenting in part):

¶ 24 I concur with the principle portion of the majority's opinion, however, I feel that deciding the issue of inevitable discovery at this level without permitting the trial court the opportunity to consider it is unwise.

¶ 25 I agree that the record presented to this court is insufficient on its face to support a conclusion of "inevitable discovery." However, I disagree with the decision to foreclose any further examination of this issue in the name of "judicial economy," particularly since, as the majority points out, it was not addressed below. The majority seems intent on establishing an ill conceived rule requiring the state to raise every possible argument in response to a motion to suppress. The majority would foreclose the possibility for additional evidence and additional argument directed at this specific question under the belief that the prosecution has had an opportunity to present such an issue, but chose not to, thereby surrendering the option to ever raise it again.

¶ 26 In my experience, the question of "inevitable discovery" is often not ripe for discussion until and unless the trial court concludes that a violation of the Fourth Amendment has occurred. Further, until a trial court has reached such a conclusion, requiring such an effort would waste valuable resources for the parties and the trial courts.

¶ 27 I believe both wisdom and precedent support a more balanced approach permitting further exploration of questions like "inevitable discovery" after a trial court has determined that the Fourth Amendment has been violated. *See Murray v. United States,* 487 U.S. 533, 543, 108 S.Ct. 2529, 2536, 101 L.Ed.2d 472 (1988) (vacating the judgment and remanding the case for further hearings on the issue of the "independent source" doctrine, which had not been previously addressed); *State v. Wagoner,* 126 N.M. 9, 966 P.2d 176, (Ct.App.1998) (stating "[T]he district court made no findings, oral or written, regarding these issues. When the prosecutor began to argue for application of the inevitable-discovery exception, the district court cut him off by expressing its disapproval of the exception. Consequently, we must remand to the district court to determine whether the inevitable discovery exception applies to this case."), *rev'd on other grounds,* 130 N.M. 274, 24 P.3d 306 (Ct.App. 2001).[1]

¶ 28 Moreover, I also disagree with the majority's foray into findings of fact concerning this issue following our admission that the record is insufficient to fully address the issue. I believe that it is not our role to make findings of fact, and absent a proper finding of fact "application of the proper rule of law is difficult, if not impossible, and the reviewing function of this court is seriously undermined." *Rucker v. Dalton,* 598 P.2d 1336, 1339 (Utah 1979).

¶ 29 Accordingly, I make no judgment as to the ultimate determination of whether the evidence in this particular matter would have inevitably been discovered, but I would permit the trial court to receive additional evi-

---

1. If the trial court properly determines that the search did not violate the Fourth Amendment, it would be wasted effort to also require that the court take evidence and make findings concerning inevitable discovery at the same time.

dence and hear additional argument on the question. Moreover, I do not believe the majority is correct in stating that "remand would be a meaningless gesture that should be avoided in the interest of judicial economy." Therefore I dissent.