2004 UT App 96

**STATE of Utah, Plaintiff and Appellee,**

v.

**Troy Stephen HECHTLE, Defendant and Appellant.**

**No. 20020543 CA.**

Court of Appeals of Utah.

April 1, 2004.

Gregory Saunders, St. George, for Appellant.

Scott Garrett, Iron County Atty., Cedar City, for Appellee.

Before Judges DAVIS, GREENWOOD, and THORNE.

## OPINION

THORNE, Judge:

¶1 On June 17, 2002, following the trial court's denial of his motion to suppress evidence, Troy Stephen Hechtle pleaded guilty to speeding, and entered a conditional guilty plea to driving with any measurable controlled substance in the body, unlawful possession of a controlled substance, and possession of drug paraphernalia. He now appeals.

## BACKGROUND [1]

¶2 On February 11, 2001, Hechtle was driving northbound on Interstate 15 outside Cedar City, Utah. Trooper Brian Bairett was patrolling in the area and determined that Hechtle was driving at over 88 miles per hour—well above the posted speed limit. Consequently, the trooper pulled Hechtle over. As the trooper approached Hechtle's vehicle, he noted that in addition to Hechtle, the car contained two other people—one in the front passenger seat, and the other in the rear seat area. He then noticed both Hechtle and his front seat passenger light cigarettes. When he got to the car and began speaking with Hechtle, the trooper noticed two or three air fresheners in the car.

¶3 The trooper testified that the presence of multiple air fresheners, coupled with the occupants' act of lighting cigarettes on his approach, aroused in him a suspicion that Hechtle may have been attempting to mask other odors. Nonetheless, the trooper ignored his suspicions, informed Hechtle of the

reason for the traffic stop, and asked him for his license and registration. However, as the encounter progressed the trooper's suspicions heightened because Hechtle was "being overly helpful with the situation." As described by the trooper: "When people are overly helpful and want their ticket and they want to leave, they have something they are trying to hide."

¶4 The trooper took Hechtle's license and registration and proceeded back to his patrol car to complete the ticket and check for warrants. Hechtle proved to be free of outstanding warrants; however, as the trooper completed the speeding ticket, he noticed that Hechtle had a corrective lens restriction on his license. The trooper returned to Hechtle's vehicle and asked Hechtle if he was wearing either prescription sunglasses or contact lenses as required by his license. Hechtle explained that he had recently undergone vision correction surgery and as he offered this explanation he pulled his sunglasses away from his eyes. Without the sunglasses interfering, the trooper was able to see that Hechtle's eyes were "very red, very glassy." They also "had a droop to them," and the pupils were dilated. Consequently, the trooper "knew that [Hechtle] was probably using marijuana" and asked Hechtle to stick out his tongue. Hechtle complied. The trooper noted that Hechtle's tongue was "very green" with "blisters all over the back of it." This information "confirmed" to the trooper that Hechtle had been smoking marijuana.

¶5 The trooper further testified that he asked Hechtle to step out of the car to conduct field sobriety tests. However, immediately after Hechtle exited the car, the trooper frisked him. During the frisk, the trooper felt the outline of a small marijuana pipe in Hechtle's jacket pocket and asked Hechtle to remove it. After Hechtle complied, the trooper read him his *Miranda* rights and placed him under arrest. Hechtle then admitted to smoking marijuana earlier in the day. During the subsequent search

1. " 'We recite the facts in the "light most favorable to the trial court's findings from the suppression hearing." ' " *State v. Collins,* 2002 UT App 253, ¶ 2, 53 P.3d 953 (quoting *State v. Giron,* 943 P.2d 1114, 1115 (Utah Ct.App.1997) (additional citations omitted)), *cert. denied,* 63 P.3d 104 (Utah 2003).

incident to the arrest, the trooper discovered a small amount of marijuana in the car. As a result, Hechtle was charged with speeding, possession of paraphernalia, possession of a controlled substance, and driving with any measurable controlled substance in the body.

¶ 6 After the State filed charges, Hechtle filed a motion to suppress all evidence discovered as a result of the trooper's frisk. Specifically, Hechtle argued that the trooper had no reason to perform the frisk, and absent the frisk the trooper would not have discovered either the marijuana or the pipe, nor would Hechtle have confessed to recent consumption. The State responded and a hearing was held. Trooper Bairett and Hechtle both testified at the hearing. Although the trooper's testimony reflected the aforementioned facts, he further testified that he had decided to arrest Hechtle before asking him to get out of the car, and as such, he knew that he would soon thereafter be searching Hechtle's car. He also testified that although he was not a drug recognition examiner (DRE), he had attended several classes taught by DREs, as well as other classes focused on drug interdiction.

¶ 7 Following the hearing, the trial court issued findings of fact and conclusions of law. The court concluded that Hechtle had been under arrest at the time of the frisk. Therefore, the frisk was a search incident to arrest. The court further found that sufficient probable cause existed to support the arrest. Consequently, all of the evidence that resulted from the search was admissible, including Hechtle's confession. The court did not, however, draw any conclusions concerning whether the circumstances supported a *Terry* frisk or whether the trooper would have inevitably discovered the evidence had the trooper not searched Hechtle. Hechtle then pleaded guilty to all of the charges, while reserving his right to appeal the trial court's ruling on the suppression issue.[2] He now appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Hechtle argues that the trial court erred in denying his motion to sup-

press. Ordinarily, "[i]f a case involves a mixed question of fact and law, we afford some measure of discretion to the district court's application of the law. The measure of discretion afforded varies, however, according to the issue being reviewed." *State v. Hansen*, 2002 UT 125, ¶ 26, 63 P.3d 650 (footnote and citations omitted). "When a case involves the reasonableness of a search and seizure, 'we afford little discretion to the district court because there must be state-wide standards that guide law enforcement and prosecutorial officials.'" *State v. Warren*, 2003 UT 36, ¶ 12, 78 P.3d 590 (quoting *Hansen*, 2002 UT 125 at ¶ 26, 63 P.3d 650). "'State-wide standards also help ensure different trial judges will reach the same legal conclusion in cases that have little factual difference.'" *Id.* (quoting *Hansen*, 2002 UT 125 at ¶ 26, 63 P.3d 650).

## ANALYSIS

¶ 9 Hechtle argues that the trial court erred in concluding that the trooper had probable cause to believe that Hechtle was driving with any measurable controlled substance in his body at the time that the trooper searched him. Consequently, Hechtle argues, the trial court erred in concluding that the frisk was a search incident to a lawful arrest. "A search of an arrestee's person is valid without a warrant, despite the fact that it shortly precedes the arrest, 'so long as the arrest and the search are substantially contemporaneous,'" *State v. Chansamone*, 2003 UT App 107, ¶ 11, 69 P.3d 293 (quoting *State v. Banks*, 720 P.2d 1380, 1383–84 (Utah 1986)), and the arrest is lawful; viz., "supported by probable cause and authorized by statute." *State v. Trane*, 2002 UT 97, ¶ 25, 57 P.3d 1052.

¶ 10 As required by the Fourth Amendment, to justify a warrantless arrest "an officer must have probable cause ... 'to believe that the suspect has committed or is committing an offense.'" *Id.* at ¶ 26 (citation omitted). Probable cause determinations are

---

2. Hechtle's plea of guilty to the speeding charge was unconditional. Thus, the outcome of this appeal has no impact on his speeding conviction.

reviewed under an " 'objective standard: whether from the facts known to the officer, and the inferences [that can] fairly ... be drawn therefrom, a reasonable and prudent person in [the officer's] position would be justified in believing that the suspect had committed the offense' " for which he was arrested. *Id.* at ¶ 27 (alterations in original) (quoting *State v. Cole,* 674 P.2d 119, 125 (Utah 1983) (additional citations omitted)). In other words, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle,* 540 U.S. ——, 124 S.Ct. 795, 800, 157 L.Ed.2d 769 (2003) (citation omitted).

■ ¶ 11 However, we do not examine these facts in isolation, but rather, we examine the totality of the circumstances to determine whether " 'a prudent person, or one of reasonable caution [would believe, based upon the] circumstances shown, that the suspect has committed, is committing, or is about to commit' " the offense for which he is arrested. *Chansamone,* 2003 UT App 107 at ¶ 11, 69 P.3d 293 (quoting *Trane,* 2002 UT 97 at ¶ 27, 57 P.3d 1052).

¶ 12 Here, the trooper arrested Hechtle for a violation of Utah Code Annotated section 41–6–44.6 (1998). Section 41–6–44.6 provides, in pertinent part;

> In cases not amounting to a violation of Section 44–6–44 [ (Driving under the influence of alcohol, drugs, or with specified or unsafe blood alcohol concentration) ], a person may not operate or be in actual physical control of a motor vehicle within this state if the person has any measurable

controlled substance or metabolite of a controlled substance in the person's body.

> . . . .

> A peace officer may, without a warrant, arrest a person for a violation of this section when the officer has probable cause to believe the violation has occurred, although not in the officer's presence, and if the officer has probable cause to believe that the violation was committed by the person.

Utah Code Ann. § 41–6–44.6(2), (5). In the instant case, the encounter began when Trooper Bairett stopped Hechtle for speeding, not for driving under the influence, or even for erratic driving. As the trooper approached the car, he noticed Hechtle and his front seat passenger light cigarettes. Then, after he asked the occupants to extinguish their cigarettes and began to explain to Hechtle the reason for the traffic stop, the trooper noticed two or three air fresheners in the passenger compartment. The trooper further noticed that Hechtle was being very helpful during the stop. Finally, after writing the ticket and determining that Hechtle had no outstanding warrants, the trooper asked Hechtle whether he was complying with the corrective lens restriction on his license. Hechtle informed the trooper that his vision had been surgically corrected and he removed his sunglasses. The trooper then noticed that Hechtle's eyes were red, droopy, and watery, and that his pupils were dilated. Consequently, the trooper asked Hechtle to stick out his tongue, whereupon the trooper saw that Hechtle's tongue was green with blistering toward the back.

¶ 13 The State argues that these circumstances, when coupled with Trooper Bairett's training and experience, are sufficient to support a probable cause determination.[3] We

---

3. The State argues that Trooper Bairett's experience and training are extraordinary and through his experience and training the trooper is extremely knowledgeable about "drugs and drug-related offenses." Although this may be true, the trooper is not a certified drug recognition examiner (DRE) and does not possess the training or background that entitles an officer to that title. As stated by the Washington Supreme Court:

> To be certified as a DRE, an officer must complete a three-phase program of instruction. First, the officer must attend a 16–hour 'pre-school,' which involves an overview of the

DRE program, and instruction on the seven drug categories and basic drug terminology. Second, the officer must complete a 56–hour DRE school program. This program consists of 30 modules of instruction, including an overview of the development and validation of the drug evaluation process, and sessions on each drug category. In addition to classroom instruction, the program requires practical field training. Additionally, the officer must pass a written examination before beginning the next phase of training. Finally the officer begins certification training. Certification re-

disagree. Admittedly, the presence of multiple air fresheners has been accepted as a factor that can support, when viewed in conjunction with other factors, the existence of a reasonable suspicion of drug use or transportation. *See United States v. Mondragon Farias*, 43 F.Supp.2d 1276, 1283 (D.Utah 1999) (noting that "air freshener[s] coupled with other indicia of criminal activity supports a reasonable brief inquiry for purposes of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)"). We further acknowledge that the condition of Hechtle's eyes at the time of the stop also supports the trooper's belief that Hechtle may have been engaged in criminal activity. We note, however, that the State has presented nothing, no scientific studies and no case law or other authority, to support the reliability of the trooper's concern regarding the condition of Hechtle's tongue. *Cf. State v. Wheeler*, No. 24397-1-II, 100 Wash.App. 1062, 2000 WL 646511, *2 n. 2, 2000 Wash.App. LEXIS 779, *7 n. 2 (Wash.Ct.App. May 19, 2000) ("Although we assume the officer's assertion to be true for the purposes of this opinion, we are nevertheless skeptical as to its accuracy. We find no case stating that recent marijuana usage leads to a green tongue.").

¶ 14 In contrast, however, there are a number of factors weighing against finding probable cause to believe that Hechtle was driving with any measurable amount of controlled substance in his body. First, the trooper stopped Hechtle for speeding and nothing in the record suggests that the trooper had reason to believe that Hechtle was driving erratically, or that Hechtle was driving while impaired. Second, Hechtle cooperated with the trooper and was, in fact, "very helpful" during the encounter. Contrary to the trooper's assumptions, helpfulness during the traffic stop does not, normally, qualify as an indicia of criminal behavior and does not contribute to the development of probable cause. *Cf. State v. Warren*, 2003 UT 36,¶ 32, 78 P.3d 590 (stating that "cooperative behavior" and "willing compliance" weigh against the reasonability of a frisk). Third, the trooper noted no visible drug paraphernalia, no signs of *recent* drug use, and no odor of marijuana emanating from either the car or from Hechtle. Finally, assuming the trooper's suspicions of drug use may have been *reasonable* given the circumstances, he did nothing to confirm his suspicions. The trooper performed no field sobriety tests and made no attempt to involve a certified DRE to validate his suspicions.

¶ 15 Taken as a whole, the facts articulated by the trooper weigh against finding that probable cause existed to support the arrest. Although the presence of multiple air fresheners and other masking agents, as well as

quires the officer participate in a minimum of 12 complete examinations under the supervision of a trained DRE instructor. Of those 12 evaluations, the officer must identify an individual under the influence of at least 3 of the 7 drug categories. The officer is required to obtain a minimum 75 percent toxicological corroboration rate. The officer must then pass another written examination and a separate skills demonstration examination performed in front of two DRE instructors before he or she becomes certified as a DRE. Finally, the officer must maintain an up-to-date resume or curriculum vitae.

Additionally, a DRE must be recertified every two years. During that time period, the DRE is required to conduct four hands-on evaluations and to attend eight hours of in-service training.
*State v. Baity*, 140 Wash.2d 1, 991 P.2d 1151, 1154 (2000) (relying upon the standards adopted by the International Association of Chiefs of Police). Furthermore, had a DRE been involved in this case, the facts before this court would, most likely, be radically different.

To determine whether a driver is under the influence of a specific category of drugs other than alcohol, DRE's use a 12–step procedure based on a variety of observable signs and symptoms that are known to be reliable indicators of drug impairment. All DREs, regardless of agency, use the same procedures, in the same order, on all drivers. In theory, a DRE will not reach a final decision until the entire evaluation is complete....

When in doubt, the DRE must find the driver is not under the influence.
*Id.* at 1155. However, as the Minnesota Supreme Court stated, "the protocol ... is not itself a scientific technique but rather a list of the things a prudent, trained and experienced officer should consider before formulating or expressing an opinion whether the subject is under the influence of some controlled substance." *State v. Klawitter*, 518 N.W.2d 577, 584 (Minn.1994). Consequently, conclusions concerning drug use do not require a DRE so long as the officer involved is prudent, experienced, and trained and can employ proper technique in making the determination.

the condition of Hechtle's eyes, are certainly suggestive of possible drug use, they do not alone create probable cause. Furthermore, we are troubled by the trooper's reliance on the appearance of Hechtle's tongue as dispositive proof of marijuana use.

¶ 16 Even if we were persuaded to accept the State's position that the condition of Hechtle's eyes and tongue are presumptively suggestive of marijuana use, nothing in the record indicates either how long these conditions are sustained or how long measurable quantities of marijuana remains in the system as required by the statute. Moreover, the record does not reflect that the trooper provided the court with answers to these questions. Consequently, we are left with the conclusion that the trooper arrested Hechtle on a hunch. The trooper's mere suspicion that Hechtle had, at some point in the past, ingested marijuana, is insufficient to support the trial court's determination that the trooper had probable cause to arrest Hechtle for driving with any measurable amount of controlled substance in his body. *See State v. Wheeler,* No. 24397–1–II, 100 Wash.App. 1062, 2000 WL 646511, **2–3, 2000 Wash.App. LEXIS 779, **7–9 (Wash.Ct. App. May 19, 2000).

 ¶ 17 Although we are cognizant of the difficulties and dangers encountered daily by police officers, and we fully acknowledge an officer's ability and right to draw upon his training and skills when making decisions in the field, in the absence of validation, such as an examination by a certified DRE or the application of relevant field sobriety tests, we conclude that in this instance the trooper's suspicions were insufficient to establish probable cause.[4]

4. Assuming that his appeal would succeed, Hechtle requests that we remand this case to the trial court for further proceedings concerning the reasonableness of the trooper's frisk pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We are, however, unable to grant this request. *See State v. Topanotes,* 2003 UT 30,¶ 11, 76 P.3d 1159 (stating "when the State has the burden of proof and the record on appeal fails to sustain any theory of admissibility, the State 'is not entitled to a remand to put on new evidence' " (quoting *State v. Hodson,* 907 P.2d 1155, 1159 (Utah 1995))). Moreover, although we are empowered to affirm the trial

## CONCLUSION

¶ 18 The totality of the circumstances articulated by the trooper do not support a conclusion that his arrest of Hechtle was supported by probable cause. Absent probable cause, the seizure and subsequent search were unlawful, and all of the evidence realized as a result must be suppressed. Accordingly, we reverse the trial court's order and remand, directing the trial court to grant Hechtle's motion to suppress.

¶ 19 WE CONCUR: JAMES Z. DAVIS and PAMELA T. GREENWOOD, Judges.

court's decision on any ground apparent in the record and "sustainable by the factual findings of the trial court," *id.* at ¶ 9, "[t]o do so, the legal ground must be 'apparent on the record' and sufficiently briefed by the appellee." *State v. Chevre,* 2000 UT App 6,¶ 12, 994 P.2d 1278 (quoting *State v. Montoya,* 937 P.2d 145, 149–50 (Utah Ct.App.1997)). Here, the State made no effort to argue the merits of an alternative affirmance, and, instead, focused solely on the probable cause issue. Consequently, the State has abandoned the issue. Accordingly, we remand this case to the trial court with instructions that Hechtle's motion to suppress be granted.