2009 UT App 397

STATE of Utah, Plaintiff and Appellee,

v.

Heather RICHARDS, Defendant and Appellant.

No. 20080855–CA.

Court of Appeals of Utah.

Dec. 31, 2009.

Edward J. Stone, Park City, for Appellant.

Mark L. Shurtleff, Atty. Gen. and Marian Decker, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges BENCH, ORME, and THORNE.

## OPINION

ORME, Judge:

¶ 1 This appeal presents the issue of whether a police officer had a reasonable, articulable suspicion that criminal activity was afoot so as to justify the investigatory detention of Defendant Heather Richards when the officer was confronted with the overwhelming smell of air fresheners and saw multiple odor masking agents such as orange rinds, Lysol, and Armor All. We conclude that the odd combination of odor masking agents and strong smells emanating from Defendant's vehicle are objective facts that gave rise to a reasonable, articulable suspicion that Defendant was involved in drug trafficking.

## BACKGROUND

¶ 2 At approximately 9:45 p.m. on November 8, 2007, Utah Highway Patrol Trooper Jason Jensen initiated a traffic stop after observing a vehicle, which Defendant was driving, crossing the fog line[1] and following another vehicle too closely. After Trooper Jensen stopped and approached the vehicle, Defendant gave Trooper Jensen her California driver license and the vehicle's registration, which showed Defendant did not own the vehicle. Defendant indicated that the car belonged to her roommate. Trooper Jensen also asked Defendant about her travel plans, and she responded that she was traveling to Minnesota to pick up her young son, who did not like flying.

¶ 3 During this exchange, Trooper Jensen noticed first the smell of oranges and then a strong smell of what he believed to be air fresheners. He specifically testified at the preliminary hearing that the odor emanating from the vehicle was "bizarrely strong" and "overwhelmingly strong." He observed two cell phones on the front passenger seat; orange rinds scattered on the front driver-side floorboard and protruding from a fast food bag; a can of Lysol and a container of Armor All on the front passenger floorboard; and a pocket atlas on the front driver-side floorboard.

¶ 4 Trooper Jensen returned to his police vehicle and verified that Defendant's license was valid and that there were no warrants for her arrest. He then returned to Defendant's car, gave Defendant her documents back, and counseled her on the proper following distance. Thereafter, he inquired whether it was okay to ask her a few questions, and he asked her about whether she had any weapons, used drugs, or had any drugs in the vehicle. She replied in the negative to each question and then refused his request to search the vehicle, stating there were no grounds to search.

¶ 5 Trooper Jensen then told Defendant that he was going to have a dog sniff for drugs. A second officer, who had arrived at the scene with a drug dog, ran the dog around the car and the dog indicated on the trunk. The officers opened the trunk and discovered approximately sixty pounds of

---

1. The trial court defined the "fog line" as "the solid line marking the outside of the lane separat-ing the roadway from the dirt shoulder."

marijuana. After discovering the marijuana, Trooper Jensen asked Defendant—who at that time was talking on her cell phone and relaying the events as they were unfolding to someone—to step out of the vehicle. When Defendant exited the vehicle, a smoking pipe fell to the ground. The entire stop and ensuing investigation lasted about fourteen minutes.[2]

¶ 6 Defendant was charged with possession of drug paraphernalia, possession of a controlled substance with intent to distribute, and two traffic offenses, and she was bound over for trial after a preliminary hearing. She thereafter filed a motion to suppress the evidence revealed by the canine sniff, which the trial court denied. Defendant then entered a conditional guilty plea, reserving the right to appeal the suppression decision. *See generally State v. Sery*, 758 P.2d 935, 937–39 (Utah Ct.App.1988). Defendant now appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 7 This appeal raises the sole issue of whether Trooper Jensen improperly extended the scope and duration of the traffic stop without reasonable suspicion that Defendant was engaging in criminal activity. "We review the trial court's ruling on a motion to suppress for correctness, without deference to the trial court's application of the law to the facts." *State v. Parke*, 2009 UT App 50, ¶ 5, 205 P.3d 104 (citation and internal quotation marks omitted), *cert. denied*, 215 P.3d 161 (Utah 2009).

When reviewing a given factual situation to determine if reasonable suspicion justified a detention, "[c]ourts must view the articulable facts in their totality and avoid the temptation to divide the facts and evaluate them in isolation." Courts must also "judge the officer's conduct in light of common sense and ordinary human experience and . . . accord deference to an officer's ability to distinguish between innocent and suspicious actions."

*State v. Markland*, 2005 UT 26, ¶ 11, 112 P.3d 507 (alteration and omission in original) (citations omitted).

## ANALYSIS

¶ 8 "[S]topping an automobile and detaining its occupants constitute[s] a seizure within the meaning of the Fourth Amendment," but such a seizure is not unconstitutional if it is reasonable. *State v. Lopez*, 873 P.2d 1127, 1131 (Utah 1994) (second alteration in original) (citation and internal quotation marks omitted). A seizure is "constitutionally reasonable" if it is "justified at its inception"[3] and the ensuing "detention [is] reasonably related in scope to the circumstances that justified the interference in the first place." *Id.* at 1131–32 (citation and internal quotation marks omitted). Thus, "[o]nce a traffic stop is made, the detention 'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'" *Id.* at 1132 (citation omitted). "This means that an officer conducting a routine traffic stop may request a driver's license and vehicle registration, conduct a computer check, and issue a citation." *Id.* (citation and internal quotation marks omitted). However, once this business has been completed, the driver "must be allowed to proceed on his way, without being subjected to further delay by police for additional questioning." *Id.* (citation and internal quotation marks omitted).

¶ 9 An officer may, however, extend the scope and duration of the detention if he or she has "reasonable suspicion [that] more serious criminal activity" is afoot. *Id.* "Reasonable suspicion means suspicion based on specific, articulable facts drawn from the totality of the circumstances facing the officer at the time of the stop." *Id.* While an officer's subjective belief is relevant, *see State v. Warren*, 2003 UT 36, ¶ 20, 78 P.3d 590, "inchoate and unparticularized suspicion or hunch[es]" do not satisfy the reasonable

---

2. As the trial court indicated, Defendant only claims that the last four to five minutes of the detention were illegal.

3. Defendant does not claim that the traffic stop was itself illegal-no doubt because of the traffic violations observed by Trooper Jensen. *See generally State v. Lopez*, 873 P.2d 1127, 1132 (Utah 1994) ("[A] police officer is constitutionally justified in stopping a vehicle if the stop is 'incident to a traffic violation committed in the officers' presence.'") (citations omitted).

suspicion standard, *Markland,* 2005 UT 26, ¶ 10, 112 P.3d 507 (citation and internal quotation marks omitted). That said, " '[a] determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct.' Indeed, 'the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.' " *Id.* (alteration and omission in original) (citations omitted). Where reasonable suspicion is present, "officers must diligently pursue a means of investigation that is likely to confirm or dispel their suspicions quickly." *Lopez,* 873 P.2d at 1132 (citation, brackets, and internal quotation marks omitted).

■■■ ¶ 10 Trooper Jensen had received "highway interdiction training" on searching vehicles for contraband and on "indicators that are exhibited by individuals that might relate to trafficking narcotics." He testified at the preliminary hearing that his training taught him that "[m]ultiple cell phones, masking odors, [and] multiple air fresheners" are "indicators ... that might be used to either conceal or otherwise facilitate the transportation of contraband." *See generally State v. Alverez,* 2006 UT 61, ¶ 15, 147 P.3d 425 ("[O]fficers are allowed to use their training and experience in making rational inferences about possible criminal behavior."). Accordingly, when Trooper Jensen smelled oranges upon approaching the vehicle and then the "overwhelming[ ]," "bizarrely strong" odor of air fresheners, and when he saw the Armor All, Lysol, orange rinds, and two cell phones, he believed he had a reasonable suspicion that Defendant was transporting illegal drugs.[4] He specifically stated that upon returning Defendant's documents, he did not think he had probable cause to search the vehicle but did think he had the requisite reasonable suspicion to continue Defendant's detention and conduct the canine sniff.[5]

---

4. Trooper Jensen also testified he was trained to look for implausible travel stories or inconsistencies within travel stories. He questioned the veracity of Defendant's travel story due to the distance of Defendant's trip and the fact that his own young child would love to fly in an airplane. The trial court, however, determined that this was just a subjective reason, or hunch, based on Trooper Jensen's personal experience, that did not contribute to the objective, reasonable suspicion analysis. We agree, and also agree with the trial court's decision not to rely on the presence of the fast food trash and atlas, as the presence of these items during the course of a road trip does not suggest criminality. *See generally United States v. Wood,* 106 F.3d 942, 947 (10th Cir.1997) ("The possession of open maps and the vestiges of fast-food meals describes a very large category of presumably innocent travelers, and any suspicion associated with these items is virtually nonexistent.") (citation omitted); *United States v. Farias,* 43 F.Supp.2d 1276, 1283 (D.Utah 1999) ("The presence of a road atlas and fast food wrappers in defendants' vehicle is consistent with their explanation of traveling to Iowa. Based upon *Wood,* the court is persuaded that these items do not offer a particularized and objective basis for suspecting defendants of criminal activity.").

5. Defendant claims that certain statements made by Trooper Jensen, namely that he was "looking for a reason" to search her vehicle after he returned her documents and that Defendant may have been "free to go" at that time, suggest that he did not think he had reasonable suspicion. We, however, agree with the State that his testimony both at the preliminary hearing and evi-dentiary hearing on the motion to suppress clearly show that Trooper Jensen thought he had reasonable suspicion to continue the detention, but not probable cause to arrest at that point. At the preliminary hearing he replied "yes" to questions about whether the initial traffic stop concluded at the point that he returned Defendant's documents and whether she was free to go at that time, and then answered questions about why he thought he was justified in continuing to question her. At the evidentiary hearing, he indicated that "she had her stuff" and "could have left," but he would not have let her due to his suspicions.

These statements appear to bear on whether the purpose of the initial detention had been concluded when Defendant's documents were returned, and the trial court clearly determined it had been. Trooper Jensen consistently testified that he thought he was justified in continuing the detention based on the various indicators he noticed. In any event, whether Trooper Jensen had a reasonable suspicion of criminality so as to justify his further detention of Defendant turns not on his subjective belief of whether he did but, rather, is viewed objectively. *See Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard[.]") (citation footnote omit-

■ ¶ 11 We agree that the overwhelming and abnormal smell of air fresheners emanating from Defendant's vehicle along with the presence of several odor masking agents are objective facts supporting the conclusion that Trooper Jensen had a reasonable, articulable suspicion that Defendant was transporting illegal drugs, and that this suspicion justified briefly extending the scope and duration of Defendant's detention in order to quickly confirm or dispel his suspicion.[6] *See State v. Hechtle,* 2004 UT App 96, ¶¶ 3, 13, 89 P.3d 185 (discussing the detaining "trooper['s] testi[mony] that the presence of multiple air fresheners, coupled with the occupants' act of lighting cigarettes on his approach, aroused in him a suspicion that [the defendant] may have been attempting to mask other odors," and noting the relevance of multiple air fresheners in determining reasonable suspicion).[7] *See also United States v. Salzano,* 158 F.3d 1107, 1114 & n. 3 (10th Cir.1998) (agreeing "that a strong odor may give rise to reasonable suspicion on the part of law enforcement officials that the odor is being used to mask the smell of drugs," and suggesting that the facts would have supported reasonable suspicion of drug transportation if they had shown that the officer had specific knowledge that natural evergreen was used to mask drug odors or that the evergreen odor was unusually stronger than would be expected from a natural evergreen wreath displayed in a large motor home at Christmas time); *United States v. Villa-Chaparro,* 115 F.3d 797, 799–803 (10th Cir.) (concluding that an officer had reasonable suspicion to conduct a canine sniff when he observed soap crystals on the floor of a vehicle and a strong smell of detergent, the defendant did not own the vehicle, one of the vehicle's VIN plates appeared to have been altered, part of the engine compartment appeared to have been cleaned and altered, and a "fender sounded hard and dull"), *cert. denied,* 522 U.S. 926, 118 S.Ct. 326, 139 L.Ed.2d 252 (1997).[8] Although case law, *see, e.g., United States v. Flores,* 474 F.3d 1100, 1101, 1103–04 (8th Cir.2007), and Trooper Jensen's training indicate that the presence of more than a single cell phone is suggestive of drug trafficking, in this case even upon discounting any significance of Defendant having two cell phones, we conclude that the odd combination of odor masking agents and the overwhelming combination of odors emanating from Defendant's vehicle provided the "something more" than the mere presence of air fresheners to support a reasonable suspicion, as contemplated by our case law. *See Hechtle,* 2004 UT App 96, ¶ 13, 89 P.3d 185.

■ ¶ 12 To reiterate, we are not dealing with a case where an officer simply observed an air freshener hanging from a rearview mirror and caught a whiff of air freshener as he talked to the driver. Trooper Jensen, upon approaching the vehicle, first smelled

---

ted); *State v. Applegate,* 2008 UT 63, ¶ 20, 194 P.3d 925 (stating that an officer's "subjective understanding of the law is irrelevant").

**6.** Defendant challenges only whether reasonable suspicion arose, not whether the questioning about drugs or the canine sniff were reasonable means to quickly confirm or dispel Trooper Jensen's suspicions during the continued detention.

**7.** In *State v. Hechtle,* 2004 UT App 96, 89 P.3d 185, this court held that, although "the presence of multiple air fresheners, coupled with the occupants' act of lighting cigarettes on [the officer's] approach," along with the driver's red, droopy, dilated eyes, may have been suggestive of drug use, such facts alone did not support *probable cause* for the driver's arrest. *Id.* ¶¶ 3–4, 15. Of course the issue in the instant case is whether Trooper Jensen had *reasonable suspicion* of drug use or drug transport that supported extending the scope and duration of the stop to question Defendant about drugs and to conduct a canine

sniff-not whether such facts provided the necessary probable cause to arrest Defendant or to search her and her automobile.

**8.** Defendant relies on *United States v. Farias,* 43 F.Supp.2d 1276 (D.Utah 1999), and argues that the facts of that case are very similar to the facts of her case and that the reasoning of *Farias* does not support that Trooper Jensen had reasonable suspicion. We disagree because there are additional objective facts suggesting criminality here that were not present in *Farias. See id.* at 1282–84 (discussing that the officer relied on the presence of fast food wrappers, a map, the smell of air fresheners, minimal luggage, and a questionable travel story to support the continued detention; discounting all factors but the smell of air fresheners as being too innocent to suggest criminality; and concluding air fresheners alone were not enough). Here, we do not have the mere presence and aroma of air fresheners but, rather, an overwhelming smell and the presence of multiple odor masking agents.

oranges, then smelled a bizarrely strong odor of what he thought was air fresheners, and then observed all the orange rinds, Lysol, and Armor All scattered along the floorboards of the vehicle. The presence of such a peculiar combination of odor masking agents, and the fact that such strong smells emanated from the vehicle, clearly bespeak of efforts to conceal some other odor. While any given driver may love the fragrance of citrus fruit for its own sake and strive to keep the interior of her car germ free and shiny, and while there may be other odors besides the distinctive aroma of marijuana that a driver might legitimately intend to mask through the presence of air fresheners and other odor masking agents, an officer is not required to rule out all innocent explanations.[9]

¶ 13 In light of Trooper Jensen's training and experience, the presence of the multiple odor masking agents and the abnormal and overwhelming smell caused him to suspect that Defendant was successfully attempting to mask the odor of illegal drugs. Such objective facts certainly provided the necessary reasonable and articulable basis upon which to ask a few additional questions and conduct a canine sniff during a brief detention to quickly confirm or dispel such suspicion. Indeed, in light of Trooper Jensen's training and experience, under the circumstances of this case he likely would have been derelict in his duties if he sent Defendant on her way, uncritically assuming that Defendant simply liked citrus fruit, wanted a germ-free and shiny car, and enjoyed a bizarre fragrance while driving.

## CONCLUSION

¶ 14 The presence of the peculiar combination of odor masking agents and the overwhelming odor of air fresheners emanating from Defendant's vehicle gave rise to a reasonable, articulable suspicion that Defendant was involved in drug trafficking. The brief extension of the traffic stop to conduct additional questioning and the canine sniff was therefore constitutionally justified. We accordingly affirm the trial court's denial of Defendant's motion to suppress evidence resulting from the canine sniff.

¶ 15 I CONCUR: WILLIAM A. THORNE JR., Judge.

BENCH, Judge (concurring and dissenting):

¶ 16 I concur in the result of affirming the determination that Trooper Jensen had a reasonable and articulable suspicion that Defendant was involved in drug trafficking. But I dissent from the main opinion's analytical approach of discounting certain factors, such as those specifically mentioned in footnote 4.

¶ 17 "When reviewing a given factual situation to determine if reasonable suspicion justified a detention, '[c]ourts must view the articulable facts in their totality and avoid the temptation to divide the facts and evaluate them in isolation.' " *State v. Markland,* 2005 UT 26, ¶ 11, 112 P.3d 507 (alteration in original) (quoting *State v. Warren,* 2003 UT 36, ¶ 14, 78 P.3d 590); *see also State v. Alverez,* 2006 UT 61, ¶ 14, 147 P.3d 425 ("When determining whether police officers had a reasonable and articulable suspicion, . . . . courts cannot evaluate individual facts in isolation to determine whether each fact has an innocent explanation." (citing *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002))). Of particular

---

9. As indicated, an officer is not required to rule out all innocent behavior in order for reasonable suspicion to arise, and courts must avoid the temptation to look at the facts in isolation, rather than as a whole. *See State v. Markland,* 2005 UT 26, ¶¶ 10–11, 112 P.3d 507. Importantly, the Utah Supreme Court has previously held that this court "placed an improperly elevated burden on the State" by putting too much emphasis on the possibility of innocent explanations. *Id.* ¶ 18. The Utah Supreme Court determined that this court's reasoning that "the facts . . . were at least as consistent with lawful behavior as with the commission of a crime" was "akin to [imposing] a preponderance of the evidence standard" for an investigatory detention, which standard "[t]he United States Supreme Court has made . . . clear . . . is inappropriate in the investigatory detention context." *Id.* (citation and internal quotation marks omitted). *See also id.* ¶ 17 (discussing that an officer is not required to eliminate potential innocent explanations before launching an investigatory detention "because the public interest in investigating criminal activity is sufficiently important to justify the minimal intrusion into personal security that such investigatory detentions entail").

importance in understanding this analytical framework is a relatively recent case, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). In *Arvizu*, a border patrol agent stopped a minivan and performed a search of the vehicle, during which the agent found a substantial amount of marijuana. *See id.* at 268, 122 S.Ct. 744. In reaching its conclusion that the evidence should be suppressed, the Ninth Circuit "categorized [seven of the ten] factors relied upon by the District Court as simply out of bounds in deciding whether there was 'reasonable suspicion' for the stop." *Id.*

¶ 18 The United States Supreme Court, acting unanimously, reversed the Ninth Circuit's decision and stated, "The court's evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the 'totality of the circumstances,' as our cases have understood that phrase." *Id.* at 274, 122 S.Ct. 744. The Supreme Court further explained that the Ninth Circuit

> appeared to believe that each observation by [the agent] that was by itself readily susceptible to an innocent explanation was entitled to "no weight." *Terry[ v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ], however, precludes this sort of divide-and-conquer analysis. The officer in *Terry* observed the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another. Although each of the series of acts was "perhaps innocent in itself," we held that, taken together, they "warranted further investigation."
>
> . . . .
>
> ... [T]he [Ninth Circuit's] approach [therefore] would ... seriously undercut the "totality of the circumstances" principle which governs the existence *vel non* of "reasonable suspicion."

*Id.* at 274–75, 122 S.Ct. 744 (citations omitted).

¶ 19 The majority's discounting of the additional factors—the cell phones, the atlas, the fast food wrappers, and Defendant's travel story—does precisely what the *Arvizu* court forbade. It improperly isolates these factors, individually examines them, and places some of them "out of bounds" for purposes of a reasonable-suspicion determination.[1]

¶ 20 The majority's outright rejection of Trooper Jensen's suspicion of Defendant's travel story as an irrelevant, subjective hunch is also inconsistent with controlling case law. The Utah Supreme Court has interpreted *Terry* to permit consideration of an "officer's subjective interpretation of the facts as part of the totality of the circumstances," thereby acknowledging that "subjective elements ... may be considered in an otherwise objective analysis." *Warren*, 2003 UT 36, ¶ 20, 78 P.3d 590 (citing *Arvizu*, 534 U.S. at 276, 122 S.Ct. 744). Thus, Trooper Jensen's subjective evaluation of Defendant's travel story, while alone not sufficient to justify the search, is nonetheless a legitimate factor to consider when evaluating reasonable suspicion. *See id.* ("In stating that subjective belief *alone* is not enough to justify a frisk, the United States Supreme Court appears to recognize that subjective belief may be one of the factors in determining the reasonableness of an officer's decision to perform a *Terry* frisk.").

¶ 21 In conclusion, I would base the reasonable suspicion determination on the totality of the circumstances present in the instant case.

---

1. The majority cites two cases in support of the proposition that atlases and fast food wrappers are so common and innocent as to never suggest criminal activity. *See supra* ¶ 10 n. 4 (citing *United States v. Wood*, 106 F.3d 942 (10th Cir. 1997); *United States v. Farias*, 43 F.Supp.2d 1276 (D.Utah 1999)). The continuing validity of these cases on this particular issue is questionable in light of the Supreme Court's more recent ruling in *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). *See, e.g.,* *State v. Fornof*, 218 Ariz. 74, 179 P.3d 954, 956 (Ct.App.2008) (declining to follow *United States v. Wood*, 106 F.3d 942 (10th Cir.1997), because its "reasoning conflicts with the totality of the circumstances test articulated by [the Arizona Supreme Court], because it invites the type of piecemeal evaluation of the innocence of each individual factor rejected by the United States Supreme Court" (citing *Arvizu*, 534 U.S. at 274, 122 S.Ct. 744)).