2011 UT App 192

**STATE of Utah, Plaintiff and Appellee,**

v.

**Derrick Wade GARDNER, Defendant and Appellant.**

**No. 20090782–CA.**

Court of Appeals of Utah.

June 16, 2011.

Debra M. Nelson and Robert K. Engar, Salt Lake City, for Appellant.

---

**3.** Defendant even fails to apply the superseded *Doporto* standard that he identifies as being applicable.

Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee.

Before Judges DAVIS, THORNE, and CHRISTIANSEN.

## OPINION

THORNE, Judge:

¶ 1 Derrick Wade Gardner appeals from his convictions of possession of a controlled substance with intent to distribute, *see* Utah Code Ann. § 58–37–8(1)(a)(iii) (Supp.2010), and possession of drug paraphernalia, *see id.* § 58–37a–5(1), arguing that the district court erred in failing to suppress evidence found when a deputy sheriff frisked Gardner for weapons. *See generally Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (establishing the constitutional framework for weapons frisks). We affirm.

## BACKGROUND

¶ 2 On March 23, 2008, Deputy Blake Day of the Salt Lake County Sheriff's Office initiated a traffic stop after observing a vehicle that had a cracked windshield and had failed to signal an exit. Joseph Neubauer was the driver of the stopped vehicle, and Gardner was the sole passenger. When Day ran a check on Neubauer's driver license, he discovered that Neubauer had several warrants for his arrest, "had a hazard [warning] on him for officer safety," and was known to carry concealed weapons and to be mentally unstable and a drug user.[1] In light of this information, Day called for backup, and Deputy Kevin Barrett arrived on the scene several minutes later.

¶ 3 Day and Barrett approached the vehicle, with Day on the driver's side and Barrett on the passenger side. Day spoke with Neubauer and asked him if there were any weapons in the vehicle. Neubauer responded that there was a knife or knives. As Day questioned Neubauer, Barrett spoke with Gardner. Gardner appeared to be very nervous,

and Barrett observed him fidgeting with his hands and moving them between his legs. At some point, Barrett heard Day ask Neubauer, "[W]here's the knife at then?", and Barrett observed that the question appeared to make Gardner even more nervous. At this point, Barrett became concerned that Gardner might have armed himself with the missing knife.

¶ 4 Barrett ordered Gardner out of the vehicle and asked him if he had any weapons or knives on him. Gardner replied that he did not. Barrett then asked Gardner whether "he minded if [Barrett] gave him a *Terry* frisk." Gardner did not reply verbally, but raised his arms and turned around. Barrett interpreted Gardner's response as an indication that Gardner consented to being frisked. Barrett proceeded to conduct a frisk search of Gardner, during which he found a pipe used to smoke methamphetamine. A more thorough subsequent search revealed that Gardner also had baggies of methamphetamine, pills, and a large amount of cash on his person.

¶ 5 Gardner was charged with drug and paraphernalia possession offenses and filed a motion seeking to suppress the evidence discovered as a result of the frisk. Gardner's motion argued that the frisk was unjustified because Barrett lacked a reasonable suspicion that Gardner was armed and dangerous and that Gardner did not consent to the frisk when he turned around and raised his hands. The district court held an evidentiary hearing on the motion to suppress, at which both Day and Barrett testified. At the conclusion of the hearing, the district court denied Gardner's motion. In a subsequent written order, the district court entered factual findings concluding that Neubauer had a history of drugs and dangerous weapons; that Neubauer had admitted that there was a knife or knives in the vehicle; that Gardner acted with heightened nervousness upon being asked to exit the vehicle; and that, at that

---

1. We glean this information from Day's trial testimony, which obviously occurred after the district court's ruling on Gardner's motion to suppress. Nevertheless, these and certain other background facts appear to be consistent with the testimony at Gardner's preliminary hearing, which was used by both the parties and the district court in evaluating the suppression question. We look to the trial transcript for these facts because Gardner has failed to include the preliminary hearing transcript as part of the record on appeal.

time, the knife had not yet been located. The order then recited the district court's legal conclusions that "[k]nowledge of the driver's history with weapons, the driver's admission that there was a knife in the vehicle and [Gardner's] nervousness justified the *Terry* frisk," and that "[b]y raising both arms and turning around, [Gardner] gave sufficient indication of consent to the search."

¶ 6 A jury subsequently convicted Gardner of possessing the drugs and paraphernalia discovered during the frisk. Gardner appeals from those convictions.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Gardner argues that the district court erred when it denied his motion to suppress.[2] When reviewing the denial of a motion to suppress, the appellate court reviews the district court's findings of fact for clear error and its legal conclusions for correctness. *See State v. Baker,* 2010 UT 18, ¶ 7, 229 P.3d 650. However, " '[w]hen a case involves the reasonableness of a search and seizure, we afford little discretion to the district court because there must be state-wide standards that guide law enforcement and prosecutorial officials.' " *Id.* (quoting *State v. Warren,* 2003 UT 36, ¶ 12, 78 P.3d 590).

## ANALYSIS

¶ 8 Gardner challenges the district court's denial of his motion to suppress, arguing that the frisk was unjustified because the circumstances did not give rise to a reasonable suspicion that Gardner was armed and dangerous. *See generally Terry v. Ohio,* 392 U.S. 1, 21, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (holding that police may frisk an individual for weapons upon "specific and articulable facts" leading to a reasonable be-

lief "that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous"). We disagree, and we affirm both the district court's denial of Gardner's suppression motion and Gardner's convictions below.[3]

¶ 9 The legal standards for reviewing the constitutionality of a weapons frisk are well-settled. "[O]fficers who conduct routine traffic stop[s] may perform a pat-down of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." *Baker,* 2010 UT 18, ¶ 41, 229 P.3d 650 (alterations in original) (internal quotation marks omitted). A weapons frisk is valid "only if the officer reasonably believes both that the suspect is dangerous, and that he may obtain immediate control of weapons." *State v. Brake,* 2004 UT 95, ¶ 26, 103 P.3d 699. "We evaluate the reasonableness of a weapons search 'objectively according to the totality of the circumstances.' " *Baker,* 2010 UT 18, ¶ 41, 229 P.3d 650 (quoting *Warren,* 2003 UT 36, ¶ 14, 78 P.3d 590).

¶ 10 Here, the totality of the circumstances readily supports the conclusion that Barrett had a "reasonable suspicion that [Gardner] may be armed and dangerous." *See id.* (internal quotation marks omitted). Barrett encountered Gardner as a passenger in a vehicle driven by Neubauer, who was known to carry concealed weapons and "had a hazard [warning] on him for officer safety." Neubauer had admitted to Day that there was a knife or knives in the vehicle. Gardner appeared to be very nervous throughout the stop, and Barrett observed him fidgeting with his hands. These factors alone, and particularly the admitted presence of weapons,[4] might suffice to justify frisking the

---

2. Gardner also briefed an issue relating to the admission of expert testimony. However, Gardner has expressly abandoned this issue and we do not address it.

3. Gardner also argues that the district court erred in concluding that he consented to the frisk by raising his hands and turning around when Barrett asked to frisk him. In light of our conclusion that the frisk was justified by a reasonable suspicion that Gardner was armed and dangerous, we need not reach the consent issue. However, we note that we are not persuaded by

the State's argument that the circumstances presented here established a consent search.

4. We do not address today whether the mere fact that a person may be in possession of a weapon renders that person "armed and dangerous" for purposes of justifying a weapons frisk. We do note that one state supreme court has observed, in this context, that "[a] person can be armed without posing a risk of danger," *see State v. Henage,* 143 Idaho 655, 152 P.3d 16, 22 (2007), and that our own supreme court has established that, at least in some circumstances, a weapon

vehicle's occupants, although there are certainly other circumstances suggesting that Gardner did not represent a threat.[5]

¶ 11 However, the one fact that stands out as justifying the frisk in this case is Barrett hearing Day ask Neubauer, "[W]here's the knife at then?" Under the totality of the circumstances facing Barrett, hearing such a question would give rise to a number of reasonable inferences. These reasonable inferences include that Neubauer had identified a knife as being present, that Day had asked Neubauer to produce the knife, that Neubauer had been unable to do so, and that the reason Neubauer could not produce the knife was because it had been secured by the only other person in the vehicle—Gardner. While it was later determined that Gardner did not, in fact, have the knife in his possession, the inference that he did was entirely reasonable.

¶ 12 At the suppression hearing, Barrett testified to reaching the ultimate inference that Gardner may have secured the knife:

> I didn't [have any safety concerns] until, as I'm having this conversation with Mr. Gardner, I overheard Day ask something about, "Well, where's the knife at then?" from the other side of the vehicle.... At that point I did, with Mr. Gardner's nervousness and the fact that the driver had a weapons history and now we've got an unknown knife in an unknown location. I became concerned that the knife might be with Mr. Gardner, the passenger, now.

The district court's factual findings and conclusions of law are also consistent with such a chain of reasonable inferences on the part of Barrett.

¶ 13 We determine that Barrett's suspicion that Gardner may have armed himself with the missing knife is a reasonable one under the circumstances. Although there may have been other reasonable explanations for Neubauer's apparent inability to produce the knife to Day, the mere existence of such other possible innocent or innocuous explanations does not render Barrett's actual suspicion any less reasonable. *See generally State v. Richards*, 2009 UT App 397, ¶ 12 n. 9, 224 P.3d 733 ("[A]n officer is not required to rule out all innocent behavior in order for reasonable suspicion to arise...."). Barrett's suspicion was also consistent with several other circumstances present here, such as Gardner's association with a person of known dangerous tendencies and Gardner's pronounced and increasing nervousness.

¶ 14 Having determined that Barrett had a reasonable suspicion that Gardner had armed himself with the missing knife, we have little difficulty in concluding that the frisk of Gardner was justified. One who conceals a weapon on or about his person *in response to a police encounter* represents a significant threat to officer safety, as such action suggests a certain willingness to use the weapon against the officers initiating the encounter. If, as Barrett reasonably suspected, Gardner had armed himself with the missing knife upon the stop of the vehicle, then Gardner truly was "armed *and* dangerous" to officers on the scene, and a frisk to secure any weapons on Gardner's person was eminently justified. *See State v. Baker*, 2010 UT 18, ¶ 41, 229 P.3d 650 (emphasis added) (internal quotation marks omitted).

## CONCLUSION

¶ 15 We agree with the district court that, under the totality of the circumstances, Barrett had a "reasonable suspicion that [Gardner] may be armed and dangerous." *See id.* (internal quotation marks omitted). Accordingly, Barrett's frisk of Gardner was consti-

---

that has been volunteered to and secured by police will no longer justify frisking the person who originally possessed it. *See State v. Baker*, 2010 UT 18, ¶ 43, 229 P.3d 650 ("We hold that when an individual voluntarily relinquishes a knife, particularly when it is just a small pocket knife, the knife alone does not give an officer automatic justification to conduct a protective frisk."). Nevertheless, the known presence of a weapon would seem to inevitably weigh heavily in favor of a determination that a person is armed and dangerous.

5. Factors mitigating against a conclusion that Gardner was armed and dangerous include his status as a passenger in a vehicle that was stopped for minor traffic violations, his lack of hostility toward and cooperation with Barrett, and his denial that he had any weapons on his person.

tutionally permissible, and the district court properly denied Gardner's motion to suppress. We affirm Gardner's convictions below.

¶ 16 I CONCUR: MICHELE M. CHRISTIANSEN, Judge.

¶ 17 I CONCUR IN THE RESULT: JAMES Z. DAVIS, Presiding Judge.